**Oliver POLLARD, Jr.,**
**Plaintiff-Appellee,**

v.

**REA MAGNET WIRE COMPANY, INC.,**
**Defendant-Appellant.**

**No. 86–2935.**

United States Court of Appeals,
Seventh Circuit.

Argued May 20, 1987.

Decided July 13, 1987.

Rehearing and Rehearing En Banc
Denied Aug. 3, 1987.

Marlene W. Jackson, Aluminum Co. of America, Legal Dept., Pittsburgh, Pa., for defendant-appellant.

Steven L. Jackson, Miller & Stewart, Ft. Wayne, Ind., for plaintiff-appellee.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Oliver Pollard, a body builder holding the title "Mr. Fort Wayne", asked his employer to let him take time off during the week of July 23, 1984, so that he could attend a body-building event in Las Vegas. Rea Magnet Wire Co., the employer, said no. On July 23 Pollard did not appear for work. He called a supervisor and reported that he had "personal reasons" and an ankle injury. Pollard or his sister called in on each of the next four days, telling Rea that Pollard would not appear but not giving a reason. The management of Rea—suspicious not only because of the request for leave but also because during an earlier absence on account of a back injury Pollard had been seen lifting weights in a local gym (for which he was suspended three days)—called Pollard into the office before the start of work on July 30. Pollard said that he had been absent because of an ankle injury but did not bring an explanation from his physician. He was suspended on the spot and later fired. The district court held a bench trial and concluded that Pollard was unable to work the week of July 23 because of an injury. He ordered Rea to pay Pollard almost $19,000 for lost wages and interest and $5,000 for emotional distress.

If the only question were whether Pollard was injured, we would accept the judge's conclusion without hesitation. But no federal rule requires just cause for discharges. *NLRB v. Loy Food Stores, Inc.*, 697 F.2d 798, 801 (7th Cir.1983). Pollard collected unemployment insurance after the state concluded that Rea lacked good cause to fire him, and he collected $2,000 from his union after the union negligently failed to take Pollard's case to arbitration. The only conceivable federal claim is based on Pollard's race. He is black, and he filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. The district court found that Rea intentionally discriminated against Pollard because of his race. Unfortunately for Pollard, there is no evidence of discrimination as opposed to mistake.

Once the trial in a disparate treatment case is over, the question is whether the employer intentionally discriminated against the employee on account of race or another characteristic covered by the statute. The employee bears the burden on this subject, and the rules governing prima facie cases, order of proof, responses, and so on no longer matter. *Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 480 (7th Cir.1986). Pollard did not have direct evidence of discrimination. (The court excluded as hearsay the only proffer, and this was not erroneous.) Pollard also produced none of the usual forms of indirect evidence, such as statistics or comparable cases. Nothing in the record of the case hints that Rea discharges or disciplines black employees more frequently or more severely than white employees. So far as the record shows, no white employee has ever missed five consecutive days without medical documentation and been allowed to remain. Indeed, the collective bargaining agreement between Rea and the union provides that an employee who misses five consecutive days "without permission" "shall" be fired. The only other employees discussed at the trial were two white workers who missed five or more days and *were* fired. Cf. *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir.1985) (finding much stronger comparative evidence insufficient as a matter of law).

The district court's decision rests on the proposition that if the employer offers a pretextual explanation for its conduct, this

permits an inference of discrimination. Such an inference may be drawn. *Benzies v. Illinois Department of Mental Health and Developmental Disabilities,* 810 F.2d 146, 148 (7th Cir.1987). If the employer is trying to hide its real reason, that effort—coupled with the evidence making up the employee's prima facie case—may convince the trier of fact that the real reason needed to be hidden and therefore probably was discriminatory. See also *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3d Cir.1987) (en banc). When the reason advanced at trial is nothing but a "pretext for discrimination", *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), to show "pretext" is to show "discrimination".

Showing that the employer dissembled is not necessarily the same as showing "pretext *for discrimination*", however; as we stressed in *Benzies,* it may mean that the employer is trying to hide some other offense, such as a violation of a civil service system or collective bargaining agreement. See also, e.g., *Maguire v. Marquette University,* 814 F.2d 1213, 1216–18 (7th Cir. 1987); *Sherkow v. Wisconsin,* 630 F.2d 498, 502 (7th Cir.1980) (both stressing that the plaintiff must show not only a false reason but also a causal chain in which race or another forbidden criterion plays a dispositive role). It is easy to confuse "pretext for discrimination" with "pretext" in the more common sense (meaning any fabricated explanation for an action), and to confound even this watery use of "pretext" with a mistake or irregularity. That is what happened here. The district judge did not conclude that Rea had advanced a "pretext for discrimination"; the court found instead that Rea did not have good cause to fire Pollard. Such a finding does not show pretext in any use of that term, which requires hiding the truth. If you honestly explain the reasons behind your decision, but the decision was ill-informed or ill-considered, your explanation is not a "pretext".

■ Rea's managers suspended Pollard on July 30 and tried to find out from airlines and tourist bureaus whether Pollard went to Las Vegas. The investigation went nowhere. Rea then fired Pollard anyway, because of the confluence of his request for leave, his weightlifting during an earlier absence, and his failure to produce a physician's report. The district court found that Susan Vachon, Rea's personnel manager who fired Pollard, "believed that Pollard took the week of July 23, 1984 off to attend the body building event." Among the related findings: "Vachon did not believe that Pollard's ankle was injured." "The management at Rea did not believe that Pollard had an ankle injury" (footnote omitted). "The management of Rea did not believe Pollard because of an earlier incident involving a back injury, and because Pollard's injury coincided with requested leave, which was denied." "The evidence shows that Pollard's reason for being absent was true, despite Vachon's belief to the contrary." In other words, the district judge found that the management at Rea correctly described its motivation, although its decision was based on an incorrect belief. A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination. See *Bechold v. IGW Systems, Inc.,* 817 F.2d 1282, 1285 (7th Cir.1987) (when the employer advances a reason unrelated to a characteristic covered by the statute, the issue "becomes one of credibility in determining whether the belief is genuinely held" rather than whether the belief is correct); *Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1426 (7th Cir.1986).

■ Because the district court confused mistake with "pretext", its decision may not stand. Still, we must decide whether to remand for more proceedings. We do not remand, because the finding that Vachon and the other managers believed that Pollard was able to work the week of July 23 ends the case. The plaintiff must show intentional discrimination. A finding directly on the question of motivation is dispositive. The district court did not say that Rea's managers acted with a dual motive in which race played some role.

None of the district court's resolutions of factual disputes is clearly erroneous, and there is no need for a new trial; the existing findings simply require a judgment for Rea.

The district judge quoted *Burdine's* statement that the plaintiff must show that the employer's explanation is "unworthy of credence" (450 U.S. at 256, 101 S.Ct. at 1095), and parts of the district court's opinion imply that this is different from "pretext". It is not; these are two different ways to phrase the question whether the employer gave an honest explanation of its behavior. At all events, none of the grounds on which the district court inferred discrimination, singly or collectively, supports an inference that Rea discriminated against Pollard. To the extent the district judge drew that inference from his own findings, the inference is clearly erroneous. *Pullman-Standard v. Swint*, 456 U.S. 273, 287–90, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982).

The court found, for example, that the two white employees fired for missing a week's work also lied about their whereabouts and activities, which Pollard had not done. But as the court found that Rea's managers *thought* Pollard had lied, the fact that the other two employees actually had lied is of no moment. Rea fired everyone, regardless of race, who missed five days' work and (Rea believed) lied about the reasons. The court's related observation that if Rea were relying on the clause in the collective bargaining agreement it should have fired rather than suspended Pollard on July 30, also does not show discrimination, for the same reason. A discharge is likely to end in arbitration; Rea's effort to document a second reason (deceit as well as failure to supply a medical excuse) no more shows pretext than a court's resort to a second ground of decision shows consciousness that the first is wrong.

Other features of Pollard's treatment do not support an inference of discrimination. Rea does not have written procedures establishing how employees obtain permission to miss work and what is a good excuse, and Rea did not tell Pollard during the meeting of July 30 that he should secure a physician's explanation. The lack of written rules affects employees of all races. Pollard does not maintain (and the district judge did not find) that Rea ever told any employee, of any race, to bring in an excuse. Rea says that all employees knew of the excuse rule and that Pollard could not have produced a satisfactory excuse because the employee must visit the physician during the absence. That is, the employee must be under the physician's care during the absence. The district court did not disbelieve Rea's assertions on these matters. Pollard concedes that he did not visit a physician during the week of July 23, so it was apparently too late for him no matter what Rea told him on July 30. There was, finally, a point system under which employees were penalized for absences; Pollard did not have enough points under this system to require discharge, because consecutive days of absence were treated as a single day's absence for purposes of awarding points. Yet the district court also did not conclude that any white employee had been treated better under this system than Pollard was, and a mistake (if there was one) in the implementation of neutral rules is not discrimination.

In the end, the district judge believed that Rea was not well run (it had no written rules on absences, did not ask Pollard to bring in an excuse, and tolerated an inconsistency between the rule in the collective bargaining agreement that requires discharge for missing five days and a point system that does not) and as a result of a coincidence (Pollard's request for leave the week of July 23) erred in not believing Pollard's excuse. An arbitrator who came to these conclusions could order Pollard reinstated with back pay. A district judge does not sit in a court of industrial relations. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere. Cf. *Graefenhain v. Pabst Brewing Co.*, No. 85–3094 (7th Cir. June 26, 1987), slip op. 13–14 (same principle under ADEA). Unless Pollard's race mattered—unless he would have been kept on

if he were white—he is not entitled to relief. Under the view implied by the district court's decision, every black employee fired without just cause is entitled to recover. Because Title VII and § 1981 protect whites as well as blacks, see *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), any white employee fired without just cause also may recover. Neither statute permits this conclusion. The employee must show that race is the dispositive factor. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 462 (7th Cir.1986). Pollard did not.

REVERSED.