**Juanita BILLUPS, Plaintiff/Appellant,**

v.

**METHODIST HOSPITAL OF CHICA-GO, an Illinois corporation, Defendant/Appellee.**

No. 90–2335.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 18, 1990.

Decided Jan. 8, 1991.

Robert L. Schroeder, Tate & Associates, Chicago, Ill., for plaintiff-appellant.

Camille A. Olson, John W. Powers, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The district court granted summary judgment for the defendant, Methodist Hospital of Chicago, in this race discrimination case brought under Title VII, 42 U.S.C. §§ 2000e *et seq.* The plaintiff, Juanita Billups ("Billups"), filed a motion to reconsider under Federal Rule of Civil Procedure 59(e). The district court denied plaintiff's motion for reconsideration. Plaintiff now appeals the district court's order granting summary judgment for the defendant and the district court's denial of her motion for reconsideration. For the following reasons, we affirm.

## I. FACTS

The following facts are not contested. In March, 1988, Bethany Methodist Corporation's intermediate and skilled care facility, Bethany Methodist Terrace ("Bethany"), terminated Billups, a black woman, from her position as a certified nursing assistant ("CNA").[1] Bethany alleged that it terminated the plaintiff in response to its determination that Billups had physically abused a patient on four separate occasions.

On March 9, 1988, Billups' co-worker, Pajongjit Guntajaranti ("Kim"), met with Bethany's Director of Nursing Services, Ms. Julie Davidson, to report some troubling events she allegedly witnessed. The meeting was not planned or pre-arranged. During the meeting, Kim informed Davidson that she witnessed Billups physically abuse an elderly patient, Alma Reinbach, on four separate occasions.[2] Billups and Kim had worked together previously and there is no hint in the record of animosity between the two women. Kim did not report the events to Davidson immediately after they allegedly occurred because she feared the consequences of reporting the misconduct of a fellow employee.

Davidson began an investigation of Kim's report immediately after her meeting with Kim. She checked the scheduling charts and confirmed that Billups and Kim worked together as a CNA team on Reinbach's unit on the dates in question. Davidson telephoned Billups' direct supervisor and inquired about whether she knew about the alleged incidents. The supervisor stated that she was unaware of the events. Davidson also unsuccessfully attempted to speak with Reinbach about the events.[3] Upon examining Reinbach's body, Davidson did not see any bruises.

Additionally, Davidson asked a nurse on Reinbach's floor to inquire of the other patients if they recalled hearing a scream on the morning of February 26. Davidson received a written memorandum from the nurse stating that one of the patients on Reinbach's floor distinctly remembered hearing Reinbach yelling for help on the morning of February 26. Davidson then met with Kim again and asked her to re-

---

1. CNAs are para-professionals who administer basic nursing care to elderly patients residing at Bethany including aid in eating, personal hygiene, and dressing.

2. On January 9, 1988, the plaintiff, while employed at Bethany, injured her right shoulder while administering care to Alma Reinbach. The injury required Billups to take a medical leave from work on January 9 through February 15. Kim told Davidson that on February 15, she heard Billups tell Alma Reinbach "you made me hurt, I want to revenge you."

3. Plaintiff notes that Reinbach could not corroborate Kim's story. Davidson's affidavit states that the patient, who was approximately eighty years old, was confused and therefore unable to comment on the events in question.

peat the events that she had detailed earlier.

Based on her own investigation, Davidson concluded that Billups had physically abused Alma Reinbach. The Bethany Employee Handbook and Policies and Procedure explicitly state that abuse of a patient constitutes immediate grounds for dismissal. Thus, Davidson informed Billups on March 9 that she was being terminated for physically abusing Alma Reinbach. Billups denied the allegations. On March 10 Davidson, Billups, and Lawrence Loecker, Bethany's Administrator, met and discussed the allegations of abuse. At the plaintiff's request, Loecker again met with Billups to further discuss her termination. Following the final meeting, Loecker notified Billups by letter of his affirmation of Davidson's earlier decision to discharge her.

In response to her termination, Billups filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was discharged on the basis of her race, black, in violation of Title VII and 42 U.S.C. § 1981. On August 30, 1989 the district court granted defendant's motion to dismiss Billups' § 1981 claim for failure to state a claim for relief. Billups does not appeal that dismissal.

The district court granted defendant's motion for summary judgment as to the remaining Title VII claim. The district court, in open court, gave its reasons for granting summary judgment in favor of the defendant. The district court denied Billups' timely motion for reconsideration. Billups appeals both decisions.

## II. ANALYSIS

### A. *Summary Judgment*

#### 1. Framework

■■■ This court reviews *de novo* the district court's decision to grant summary judgment. *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir.1989). Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment is appropriate "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990) (quoting *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The non-moving party may not rest on the pleadings but must affirmatively demonstrate, by specific factual allegations, that a genuine material fact exists for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). We review the record and all reasonable inferences drawn therefrom in the light most favorable to the non-movant. *Randle v. LaSalle Telecommunications Inc.,* 876 F.2d 563, 567 (7th Cir.1989) (citation omitted).

■■■ In a Title VII disparate treatment case, once the employee establishes a prima facie case of discrimination,[4] "the burden shifts to the employer to articulate some legitimate nondiscriminatory reason" for terminating the employee. *Williams v. Williams Electronics Inc.,* 856 F.2d 920, 923 (7th Cir.1988). If the employer articulates a non-discriminatory reason the burden of production shifts back to the employee to prove by a preponderance of the evidence that the proffered reason was re-

**4.** Billups contends that the defendant did not contest the district court's finding that she established a prima facie case of discrimination. In its brief, the defendant stated that Billups is incorrect. (Appellee's Brief at 15, n. 10). However, defendant's motion for summary judgment and its supporting memorandum of law did not raise the issue of whether plaintiff successfully established a prima facie case under Title VII. Rather, they argued that Billups failed to produce any evidence that Bethany's articulated reason for termination was a pretext for racial discrimination. Additionally, both parties' briefs framed the issue on appeal as whether a

genuine issue of material fact existed with regard to the question of pretext. The defendant's memorandum in opposition to plaintiff's motion for reconsideration for the first time raised plaintiff's alleged failure to establish a prima facie case as an alternative ground for granting summary judgment. Because this alternative ground was not before the district court when it ruled on the defendant's motion for summary judgment, and because we affirm the district court's order granting summary judgment in favor of the defendant, further discussion of this alternative ground for summary judgment is unnecessary.

ally a pretext for discrimination. *Id.* Pretext may be demonstrated in one of two ways. The plaintiff may attempt to prove pretext directly by "persuading the Court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Ultimately, the plaintiff's evidence must show that she would not have been fired "but for" her race. *Williams*, 856 F.2d at 923.

The district court found that in response to plaintiff's prima facie case the defendant articulated a legitimate non-discriminatory reason for terminating her employment, namely that she physically abused a patient. There is little doubt that the defendant's articulated reason is legitimate. Physically abusing an elderly patient is serious misconduct. Moreover, the plaintiff does not contest the district court's finding that physical abuse of a patient is a legitimate reason for termination. Thus, the burden of proof shifted back to the plaintiff to demonstrate that this reason was a pretext for discrimination.

### 2. Pretext

■ The summary judgment decision in this case thus turns upon whether the district court correctly concluded that no genuine issue of material fact existed concerning the question of whether the reason the defendant offered for terminating Billups was a pretext for discrimination. As the district court correctly concluded, Billups did not present any direct evidence of discrimination. Rather, she presented evidence designed to establish that the defendant's explanation for firing her is unworthy of credence.

Plaintiff presented the following evidence to the district court in opposition to defendant's motion for summary judgment. Initially, plaintiff argued that she denied all the allegations of abuse and that she had a good work record prior to the alleged incidents. Billups' own self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation for termination. *See Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 428 (7th Cir.1989) (holding that employee's self-interested assertions were insufficient to challenge the credence of his employer's reasons for demoting him); *Williams*, 856 F.2d at 924 (employee's self-interested assertions regarding her work abilities are insufficient in themselves to raise a genuine issue of material fact).

Plaintiff also presented evidence in an attempt to demonstrate that Bethany's explanation was not genuinely held by the employer because it lacked a basis in fact.[5] To support this contention, Billups offered evidence designed to show that the investigation conducted by Davidson was somehow deficient. In this regard she asserted that Kim did not report the events to Davidson immediately, that the investigation did not "turn up anything" or corroborate the alleged events, and that she was fired rather than suspended pending a complete investigation.

As the district court correctly held, the plaintiff's evidence was insufficient to show that the employer's determination had no basis in fact. A co-worker of the plaintiff's gave a long and detailed account of the events leading to plaintiff's termination. Davidson knew that Billups had previously injured herself while taking care of Alma Reinbach. After Kim reported the events she allegedly witnessed, Davidson conducted a prompt and thorough investigation. The uncontested facts demonstrat-

5. In *Mechnig v. Sears Roebuck & Co.*, this court held that an employee may show that the reasons advanced by the employer lack credence by evidence "showing (1) that the proffered reasons have no basis in fact, (2) that the proffered reasons did not actually motivate the discharge or (3) that they were insufficient to motivate the discharge." 864 F.2d 1359, 1364–65 (7th Cir. 1988). Billups offered no evidence to show that the alleged physical abuse did not motivate her discharge except her own subjective belief. "[S]ubjective beliefs of the plaintiff, however, are insufficient to create a genuine issue of material fact." *McMillian*, 878 F.2d at 190 (citations omitted). Similarly, as stated before, plaintiff offers no evidence that the articulated reason was not one that would ordinarily result in discharge.

ed that Davidson contacted five individuals regarding the alleged incidents and sought the testimony of many others in an attempt to determine the truthfulness of the allegations. Additionally, after gathering facts from others Davidson again questioned Kim about the events she allegedly witnessed to assess the accuracy of Kim's allegations. After determining that Kim's account had not changed, Davidson asked Kim to sign a written statement regarding her report to Davidson.

Plaintiff also argued that the employer's determination lacked a basis in fact because she was terminated immediately, rather than suspended pending a lengthier investigation and because she was not given the opportunity to defend herself. Bethany's decision to terminate Billups immediately, rather than suspend her pending further investigation, was a business decision. The Bethany Employee Handbook requires immediate termination of employees who physically abuse a patient. It is not this court's practice to question an employer's good faith business decision. *Smith v. General Scanning, Inc.*, 876 F.2d 1315 (7th Cir.1989). *See also Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987) ("... no matter how high-handed [a firm's] decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere").

Billups' statement that she was terminated without an opportunity to defend herself is not true. The undisputed facts are that Davidson spoke with Billups twice by telephone about her termination. Additionally, Davidson met personally with Billups' supervisors to discuss the alleged incidents. At Billups' request Billups met again with Bethany's administrator. Also, plaintiff's assertion that the investigation "turned up nothing" is untrue. Another patient on Reinbach's floor said she heard Reinbach scream for help on the morning that Kim alleged Billups twisted Reinbach's foot. Additionally, plaintiff was assigned to Reinbach on all the dates in question.

Even if the events were completely uncorroborated as Billups contended, the evidence presented does not raise doubts as to the genuineness of the employer's termination decision. In this regard, it appears that the thrust of plaintiff's argument is that a genuine issue of material fact precluding summary judgment exists because she disputes that patient abuse occurred. This argument is misplaced. It is not enough for the plaintiff to simply assert that the acts for which she was terminated did not occur. This court has held that an ill-informed decision or an ill-considered decision is not automatically pretextual if the employer gave an honest explanation for termination. *See Pollard*, 824 F.2d at 559 (reason articulated for termination not found to be a pretext for age discrimination despite the fact that employer discharged the plaintiff on the mistaken belief that his absence from work was unexcused); *Bechold v. IGW Systems Inc.*, 817 F.2d 1282, 1285 (7th Cir.1987) (the issue is not whether the reason advanced by the employer is correct, but rather whether it is genuinely held).

Thus, our inquiry in this case is not whether the alleged acts actually occurred. Rather, our inquiry is limited to whether the employer's belief was honestly held. *Smith*, 876 F.2d at 1321. Here there is no evidence in the record that Kim lied about the events in question. Moreover, even though plaintiff, in her reply brief, states that Kim's report was "suspect", the plaintiff has never argued that Davidson's investigation was a sham. Plaintiff put forth no other evidence suggesting that the reason for termination was not based in fact.

More importantly, plaintiff offered no evidence that would allow a reasonable jury to be able to rule that Billups demonstrated by a preponderance of the evidence that she would not have been fired "but for" her race. *See Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1261–62 (7th Cir.1990) (reiterating that in a disparate treatment Title VII case the evidence must ultimately demonstrate that the employee would not have been fired "but for" the employer's intent to discriminate). In fact, Billups offered no evidence suggesting that she was terminated for any reason other than the reports of physical abuse. Billups did not offer any

of the traditional forms of indirect evidence in attempting to prove racial discrimination, such as statistics or evidence of comparable situations. *See Pollard*, 824 F.2d at 558. There is no evidence in the record suggesting that Bethany terminates black employees more frequently for physically abusing a patient, while retaining non-black employees. *Id.* Additionally, during her deposition, Billups stated that she had a good relationship with Davidson prior to her discharge and that Davidson terminated her because she believed that Billups physically abused a patient.

In light of the factual record and Billups' failure to present evidence to show Bethany's lawful reason for termination was pretextual, no reasonable juror could conclude that Billups would not have been terminated "but for" her race. Accordingly, this court affirms the district court's entry of summary judgment in favor of the defendant.

### B. *Motion for Reconsideration*

Lastly, the plaintiff argued that the district court erred in denying her motion for reconsideration. We characterize any substantive motion to alter or amend a judgment, served within ten days of the entry of judgment, as a motion under Federal Rule of Civil Procedure 59(e). *Charles v. Daley*, 799 F.2d 343 (7th Cir.1986).[6] Billups' motion will be so considered. We review the district court's order denying plaintiff's Rule 59(e) motion only for an abuse of discretion. *Villegas v. Princeton Farms*, 893 F.2d 919, 924 (7th Cir.1990).

Billups, in her brief motion for reconsideration, merely reiterated her argument that the evidence she presented was sufficient to defeat a summary judgment motion because it raised doubt as to whether the reported abuse actually occurred. Once again plaintiff's arguments misstate the law. The inquiry is not whether the events actually occurred, but whether the employer's reason for termination was honestly given. *Pollard*, 824 F.2d at 559.

Plaintiff also contended, relying on our decision in *Oxman v. WLS–T.V.*, 846 F.2d 448 (7th Cir.1988), that the district court unduly relied on plaintiff's failure to present any evidence that race was a determining factor in Bethany's decision to terminate her in granting summary judgment in defendant's favor. Billups argues that under *Oxman*, evidence showing that race was a determining factor in the decision to terminate is not required. Further, she argues that she presented enough evidence to demonstrate that the employer's articulated reason was "incredible", thus precluding summary judgment.

As the district court correctly noted, plaintiff's reliance on *Oxman* is misplaced. To survive a motion for summary judgment under *Oxman*, plaintiff must offer some evidence that the employer's reason for termination was pretextual. The plaintiff can do this by showing either discriminatory motive or that the employer's reason for termination was not genuinely held. Thus, *Oxman* stands for the proposition that the plaintiff need not present direct evidence of discriminatory intent to survive summary judgment only insofar as the plaintiff can make her case by showing that the employer's proffered reason was unworthy of credence. *Oxman*, 846 F.2d at 456. Here, plaintiff not only failed to present evidence establishing discriminatory intent, but she also failed to present evidence raising a question as to the genuineness of Bethany's articulated non-discriminatory reason. As such, this court finds that the district court did not abuse its discretion in denying plaintiff's motion to reconsider.

### III. CONCLUSION

For the reasons stated in this opinion we affirm the district court's order entering summary judgment in favor of the defendant and the district court's denial of plaintiff's motion for reconsideration.

---

6. The district court granted defendant's motion for summary judgment on December 29, 1990.

Plaintiff filed her motion for reconsideration on January 8, 1990.