986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Timothy J. MURPHY, Plaintiff-Appellant,
v.
UNITED PARCEL SERVICE, INC., Defendant-Appellee.
 No. 91-3742.
 United States Court of Appeals, Seventh Circuit.
 Feb. 23, 1993.
 
 Before POSNER and COFFEY, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 Timothy J. Murphy filed an action against United Parcel Service, Inc. ("UPS") claiming that UPS constructively discharged him by forcing him to resign from his position as a supervisor because he is white, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which forbids racial discrimination in employment, and 42 U.S.C. § 1981, which outlaws racial discrimination in contractual relations. The district court granted summary judgment in favor of UPS on both counts. Murphy appeals, and we affirm.
 
 I.
 
 2
 UPS is in the business of small package pick-up and delivery. At the time of this incident, UPS package car drivers were required to fill out time cards on a daily basis describing their pick-ups and deliveries and the time spent on each pick-up and delivery. UPS then was in a position to calculate the length of time it should have taken each driver to perform the work he completed.[1] This is known as "time allowed." UPS maintains records of how much a driver is over or under his "time allowed." In the fall of 1988, an investigation was launched by UPS's Loss Prevention Department after it received reports that supervisors were altering employee time cards in the Franklin Park, Illinois package division. Between October 25, 1988 and November 15, 1988, over 40 written statements were obtained from 30 Franklin Park employees. The investigators concluded that numerous time cards reflected excessive amounts of "training time." Characterizing work time as training time made it appear that the drivers were completing their delivery and pick-up runs more rapidly than was actually the case, reflecting well on the supervisor who apparently was running a highly efficient operation. UPS investigators concluded that Murphy, who was employed in UPS's Franklin Park, Illinois facility as a supervisor, altered records in this manner. The investigation also disclosed that seven other supervisors (four whites, two blacks and one Hispanic) had falsified UPS documents. UPS informed Murphy and the other seven supervisors that they would be discharged if they refused to resign. Murphy and the others resigned.
 
 II.
 
 3
 We review de novo a district court's grant of summary judgment. United States v. First Nat'l Bank of Cicero, 957 F.2d 1362, 1366 (7th Cir.1992). Summary judgment is proper only when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. Id. In making this determination, we must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion. Holland v. Jefferson, 883 F.2d 1307, 1312 (7th Cir.1989). However, when the party opposing the motion bears the burden of proof on a particular issue, it cannot rest on its pleadings alone. Rather, it must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. Id. In Title VII cases, where the issue of discriminatory intent is in question, summary judgment is proper where the plaintiff fails to present any evidence establishing that he was discriminated against. Id. (citation omitted).
 
 III.
 A.
 
 4
 Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1). The plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. Kizer v. Children's Learning Center, 962 F.2d 608, 611 (7th Cir.1992) (citation omitted). To establish a prima facie case, a plaintiff alleging a discriminatory discharge need demonstrate only that he was fired from a job for which he was qualified while others not in the protected class were treated more favorably. Id. (citation omitted). Once the employee establishes a prima facie case of discrimination in the employment practice, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for terminating the employee. Billups v. Methodist Hospital, 922 F.2d 1300, 1302 (7th Cir.1991). "If the employer articulates a non-discriminatory reason the burden of production shifts back to the employee to prove by a preponderance of the evidence that the proffered reason was really a pretext for discrimination." Id. at 1302-03. "Pretext may be demonstrated in one of two ways. The plaintiff may attempt to prove pretext directly by persuading the Court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." Id. at 1303 (citation omitted). Ultimately, the plaintiff's evidence must show that he would not have been forced to resign but for his race. Id.
 
 
 5
 The trial court ruled that Murphy was unable to point to any evidence that UPS treated him differently than any other similarly situated employees. According to the district court, the evidence presented established that UPS treated every employee it determined had engaged in falsifying records in violation of company policy in the same manner: it gave them a choice between resigning or being discharged. Thus, even assuming that Murphy "could make out a prima facie case, [he] has offered nothing beyond bare assertions and hearsay to show that defendant's reasons for the termination were pretextual."
 
 
 6
 On appeal, Murphy argues that he did present sufficient evidence to create a genuine issue of material fact as to whether UPS's stated motive in forcing his resignation was merely a pretext for discrimination based on race. We disagree and are not persuaded by his arguments. Murphy does not deny that he recorded "training time" in a manner that UPS officials considered a falsification of records. Moreover, it is undisputed that UPS forced the resignation of all the employees which the Fall 1988 investigation revealed had engaged in falsifying records. It is also undisputed that as a result of the investigation, UPS terminated two of the four blacks, one of the three Hispanics, and five of the 37 whites in Murphy's division. This evidence in our opinion is overwhelming that Murphy was terminated, as were all the other employees caught falsifying records, without regard for his race or color.
 
 
 7
 Murphy makes a few weak attempts at alleging that UPS did indeed discriminate against him because he is white. He argues that he was only following the orders of his black manager, DeWayne Parks, when he inaccurately filled out the training records. However, UPS company policy required Murphy to follow only "reasonable" orders. Orders in contravention of UPS policy against falsifying records were clearly unreasonable. More significantly, Murphy points to no evidence that UPS treated more leniently than him other employees who falsified records and excused this conduct by claiming that they were just following orders.
 
 
 8
 Murphy also maintains that Parks, who was among those detected falsifying records, was not forced to resign as quickly as Murphy and cites this as evidence of favoritism toward black employees. UPS does not dispute that Murphy was forced to resign in November, 1988, at the close of the investigation, while Parks was not forced to resign until the following September. UPS explains that it delayed acting against Parks only until his recovery from a heart attack he suffered during the investigation had progressed sufficiently that his health would not be threatened by the reality that he was being forced to resign. Murphy offers no evidence that UPS delayed Parks' ouster for any reason other than the medical reason given. In short, Murphy has been unable to point to any evidence in the record that suggests that UPS applied a stricter set of rules against whites than non-white employees.
 
 
 9
 Recognizing that he has come up short in offering evidence sufficient to resist a summary judgment, Murphy makes vague assertions that the district court, pursuant to Fed.R.Civ.P. 56(f),[2] should have delayed entry of summary judgment in order to allow him to gather affidavits and depositions to rebut UPS's denials. These unsupported allegations do not warrant reversing the entry of summary judgment when Murphy has failed utterly to present any evidence that UPS discriminated against him.
 
 B.
 
 10
 The district court also entered summary judgment against Murphy on his 42 U.S.C. § 1981 claim, ruling that it was barred by McKnight v. General Motors Corp., 908 F.2d 104 (7th Cir.1990), cert. denied, 111 S.Ct. 1306 (1991). In McKnight, we held, following Patterson v. McLean Credit Union, 491 U.S. 164 (1989), that § 1981 is not applicable to cases of discriminatory termination. 908 F.2d at 108-09. The district court entered summary judgment against Murphy on October 30, 1991. On November 21, 1991, Congress enacted the Civil Rights Act of 1991, P.L. 102-166, making § 1981 expressly applicable to all racial discrimination in contractual relations, including discriminatory termination claims. 42 U.S.C. § 1981(b). However, we have held that the Civil Rights Act of 1991 is applicable only to conduct engaged in after the effective date of the amendments, at least if the suit had been brought before the effective date. Luddington v. Indiana Bell, 966 F.2d 225, 229-30 (7th Cir.1992). Murphy was terminated in 1988, and he filed this action in 1990. Therefore, § 1981 is not applicable, and the entry of summary judgment against him on this count was proper.
 
 IV.
 
 11
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 UPS has now computerized its method of confirming the deliveries made by its drivers
 
 
 [2]
 Rule 56(f) states that "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."