James WALASZEK, Plaintiff

v.

REINKE INTERIOR SUPPLY
CO., Defendant.

No. 95 C 4218.

United States District Court,
N.D. Illinois.

Aug. 5, 1997.

Jacob Daniel Azulay, Roderick F. Mollison, Azulay & Azulay, P.C., Chicago, IL, for Plaintiff.

Adrianne S. Harvitt, Alenna Kathryn Bolin, Harvitt & Gekas, Ltd., Chicago, IL, Mark J. Rose, Law Offices of Mark J. Rose, Chicago, IL, Constantine John Gekas, Gekas & Associates, Ltd., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

James Walaszek ("plaintiff") brought this complaint against Reinke Interior Supply Co. ("defendant"), alleging that he was discriminated against because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. § 621 *et seq.* Plaintiff also seeks an accounting for past-due compensation.[1] Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, the court grants defendant's motion and dismisses plaintiff's prayer for an accounting.

---

1. In its Memorandum Opinion and Order dated September 19, 1996, this court noted that it may exercise supplemental jurisdiction over the state accounting pursuant to 28 U.S.C. § 1367.

## FACTS [2]

Defendant (also called "Reinke Interior" herein) is a wholesale distributor of acoustical ceilings, and is owned and operated by Henry Reinke ("Reinke"), the company's founder, sole shareholder, president, and chief operating officer. Reinke also owns and operates Reinke Wholesale Supply Co. ("Reinke Wholesale"), Reinke Gypsum Supply Co. ("Reinke Gypsum"), and Midwest Laser Co. ("Midwest Laser"). Plaintiff was employed by Reinke in the mid–1970s. In 1976, Reinke, with plaintiff's help, started Midwest Laser. By the late 1980s, plaintiff had become Vice President and General Sales Manager of Reinke Interior. In that capacity, plaintiff was directly responsible for sales to defendant's largest account, Justrite Acoustics ("Justrite"), and for seven other significant accounts. He was also responsible for supervising the other salespersons involved in Reinke's businesses. Plaintiff was paid a sales commission for his own sales, for the sales of other employees, and for overall company performance.

Until 1986, plaintiff was involved in the operations of Midwest Laser. He received a commission on Midwest Laser's sales until 1991. In 1991, defendant hired Richard Fisher ("Fisher") as the company's comptroller. Fisher computerized defendant's financial and sales information so that the firm's financial performance could be monitored and managed more easily. Based on reports generated by this system, Fisher and George Cumpata ("Cumpata"), Reinke's CPA and primary financial advisor, decided that defendant should revise its sales force's compensation packages, moving from a base salary and sales-driven commission system to one based on factors that affected sales and profit margins. Reinke instructed Fisher and Cumpata to develop a new compensation package for the sales force. Plaintiff was presented with his new compensation package in early 1992, which had a base salary and a "commission and bonus pool." The pool's value was calculated on the basis of four factors: gross profit on sales, inventory turnover control, salespersons' quotas, and overall company profitability (return on investment).

Plaintiff calculated his pay each quarter and submitted it to Reinke, who would then accept or reject it. Defendant's sales began to decline in 1989. Further, sales to Justrite began to decline during the period 1991 to 1993. In the summer of 1993, the entire sales force of Midwest Laser resigned and started a similar company designed to appropriate defendant's customers. Reinke asked plaintiff to operate Midwest Laser until a new sales force was in place. Plaintiff expressed reservations about the assignment, and was particularly concerned with how his compensation would be measured. He subsequently refused to help with Midwest Laser's management. On September 28, 1993, after Reinke ordered him to run Midwest Laser and plaintiff again refused, Reinke fired him. Plaintiff was forty-four years old. After his termination, the Justrite account was given to Mike Reynolds ("Reynolds"), a new 30–year–old employee. On December 9, 1993, plaintiff filed a charge of age discrimination against defendant with the EEOC.

Just before plaintiff was fired, Fisher calculated the final payments owed to him, based on plaintiff's most recent calculations, and produced detailed final payroll and commission checks. After his termination, plaintiff was mailed these checks amounting to $9081.92. He also received another $2,000 as "severance." Plaintiff requests an accounting of the return-on-investment portion of his bonus plan for 1992 and 1993, and seeks commissions on sales for part of the third and all of the fourth quarters of 1993.

### STANDARD

Summary judgment should not be granted unless there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the court is to construe the evidence in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). This standard places the initial burden on the movant to identify those portions of the record on file which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

**2.** The facts are taken from the parties' Local Rule 12(M) and (N) Statements of Undisputed Fact.

(1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). The granting of summary judgment to an employer is appropriate, however, if on the facts before the court, taken as favorably to the plaintiff as the evidence permits, no rational jury could conclude that he was fired due to discriminatory animus. *Shager v. Upjohn Co.,* 913 F.2d 398 (7th Cir.1990).

### DISCUSSION

#### I. Age Discrimination

■ Plaintiff's complaint alleges that he was terminated because of his age. To establish a claim for discriminatory termination, plaintiff must show that his age was a determining factor in defendant's adverse employment decision. Plaintiff may prove his claim by presenting other direct or indirect evidence of discrimination. In the instant case, plaintiff chooses the indirect approach, in which he must follow the four-step framework promulgated in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case under *McDonnell Douglas,* plaintiff must show that: (1) he is in the protected age group; (2) he was performing to his employer's legitimate expectations; (3) he was terminated; and (4) younger employees were treated more favorably. *Id.* at 794, 93 S.Ct. at 1820; *Roper v. Peabody Coal Co.,* 47 F.3d 925, 926 (7th Cir.1995).

■ Once plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302–03 (7th Cir.1991). If the employer articulates such a reason, the burden of production shifts to the employee to prove by a preponderance of the evidence that the proffered reason was really a pretext for discrimination. *Id.,* at 1303. Pretext means "a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 65 (7th Cir.1995). Plaintiff may demonstrate pretext by showing that discrimination motivated defendant to lay

him off, or that defendant's explanation is unworthy of credence. *Grohs v. Gold Bond Bldg. Prod.,* 859 F.2d 1283, 1286 (7th Cir. 1988), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989).

■ In the instant case, both parties agree that plaintiff is able to meet the first and third elements of the *McDonnell Douglas* framework. However, defendant alleges that plaintiff did not meet its legitimate performance expectations, and denies that plaintiff was replaced by Reynolds. However, the court need not address whether plaintiff has established a prima facie case if defendant has met its burden of production under *McDonnell Douglas. See Sample v. Aldi Inc.,* 61 F.3d 544 (7th Cir.1995). Where the defendant has done everything that would be required of it if plaintiff had made a prima facie case, whether the plaintiff really did so is no longer relevant. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983).

In the instant case, defendant has proffered two reasons why it fired plaintiff: (1) his sales numbers were declining; and (2) he refused to run Midwest Laser when asked to do so by Reinke. These reasons satisfy defendant's burden of articulating a nondiscriminatory and legitimate reason and, therefore, the burden shifts back to plaintiff to demonstrate that defendant's explanation for plaintiff's termination was pretextual. Plaintiff must create an issue as to whether the employer honestly believes in the reasons it offers, not whether it made a bad decision. *Sample,* 61 F.3d at 549.

■ To establish pretext, plaintiff first states that even though company sales and sales to Justrite were declining, the fault is Reinke's, not his. Thus, plaintiff states that he was performing within defendant's legitimate expectations. Plaintiff claims that Reinke directed that certain items usually sold by Reinke Interiors would be sold by Reinke Gypsum, and that Reinke further demanded that one-half of plaintiff's sales force was to devote its efforts to selling Reinke Gypsum's products.[3] Further, plaintiff

---

**3.** Plaintiff habitually misrepresents the record by citing to paragraphs of defendant's 12(M) statement which never even mention that which is

contained in plaintiff's allegation. For example, plaintiff attributed the statement set forth above

claims that sales to Justrite were sluggish because Justrite was struggling financially. However, plaintiff offers nothing to support these claims except his own suspicions. The subjective beliefs of a plaintiff are not enough to create a genuine issue of material fact. *Billups*, 922 F.2d at 1303 n. 5.

Further, plaintiff claims that even assuming that the fault for the sales decline was rightfully placed on him, it is not substantial enough to warrant termination because responsibility for sales was only one of his five primary duties as Vice President.[4] Regardless of plaintiff's opinion, however, an employer can set whatever performance standards it wants, no matter how unreasonable, provided they are not a mask for discrimination on forbidden grounds, such as race or age. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1983 do not interfere." *Sample*, 61 F.3d at 551, *citing Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 560 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

As another example of pretext, plaintiff claims that defendant used the Midwest Laser incident to force him to quit his higher-paying job so they could give it to a younger man who would receive lower compensation. Plaintiff admits that he flatly refused to go to Midwest Laser, not wanting to take what he calls a "demotion in responsibility and salary." Further, there is no evidence whatever to support the fact that Reinke was asking him to quit his job. Even plaintiff's briefs and 12(N) statement quote Reinke as saying that his move to Midwest Laser was tempo-

rary.[5] Plaintiff also admits that he helped run Midwest Laser for years and was familiar with its operations. Defendant states that after plaintiff's defiant refusal to perform an ordered task, in its judgment it was justified in terminating his employment. *See Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 337–38 (7th Cir.1991), *citing Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 427 (7th Cir.1989) ("The employee must do more than challenge the judgment of his superiors through his own self-interested assertions ... The employee's perception of himself is not relevant. It is the perception of the decision maker which is relevant"). This court does not sit as a super-personnel department that reexamines an entity's business decisions. *See Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Plaintiff does not properly address the issue of pretext and does not raise a genuine issue of fact. Accordingly, defendant's motion for summary judgment is granted.

## II. *Accounting Claim*

Although there is no separate count in plaintiff's complaint claiming that he is entitled to an accounting, the prayer for relief includes a request for "an accounting from [d]efendants for past-due commission and benefits." Because defendant's motion for summary judgment is granted, however, the basis upon which supplemental jurisdiction over the accounting "claim" was determined no longer exists. The district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction. 28 U.S.C.A. § 1367(c). *See Gregorich v. Lund*, 54 F.3d 410, 418 (7th Cir.1995).

---

to paragraphs 29 and 30 of defendant's 12(M), which provide:

> 29. Nevertheless, plaintiff's sales performance steadily declined. First, the overall sales of [Reinke Interiors] ... declined during a period in which the sales of ... Reinke Gypsum increased ...
> 30. Second, [plaintiff's] own direct sales to Justrite ... declined drastically from 1991 to 1993 ...

Plaintiff also attributes to paragraphs 29 and 30 the fact that he had no responsibility for Reinke Gypsum's operations and that Reinke's son-in-law took over the firm's management.

4. Plaintiff's job description states that his five primary duties as Vice President of Reinke Wholesale, besides assisting in corporate planning of all of Reinke's businesses, were marketing, sales, profitability, complaint handling, and assisting in formulating company policy and procedures.

5. Paragraph 36 of defendant's 12(M) statement provides: "Finally, Mr. Reinke *explicitly asked* and then ordered plaintiff to step in and operate Midwest Laser *until the sales force could be replaced*" (emphasis added).

Therefore, plaintiff's prayer for an accounting is dismissed for lack of federal jurisdiction.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's prayer for an accounting is dismissed for lack of federal jurisdiction.