151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald BOYD, Plaintiff-Appellant,
v.
Ricki HELFER, Chairman of the Board of Directors of the
Federal Deposit Insurance Corporation, Defendant-Appellee.
 No. 96-3372.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 30, 1998.*
Decided July 30, 1998.
Rehearing Denied Oct. 30, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 94 C 7139 James B. Moran, Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Donald Boyd appeals the district court's grant of summary judgment in favor of the defendant.[1] Boyd contends that the district court erred in dismissing his lawsuit, in which he claimed that the defendant refused to hire him for a position with the RTC on account of his race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-16. We affirm.
 
 
 2
 Boyd is African-American. In January 1990, he submitted an application to the RTC for four different positions; (1) managing agent; (2) credit specialist; (3) review appraiser; and (4) investigator. After an initial review of his application, he was offered an interview for the position of investigator. On March 19, 1990, Thomas Main, the department head of investigations, and Robert Webb, the assistant director of investigations, interviewed Boyd. Webb conveyed to Boyd his belief that Boyd possessed some of the qualifications needed for an investigator position. After the interview, Webb and Main appraised Boyd as having qualifications akin to a grade level nine employee, and then put his application on hold while they interviewed other candidates. On June 2, 1990, Boyd was denied employment because the RTC decided to hire only applicants meeting the qualifications for grade levels eleven through thirteen. Boyd was not interviewed for the other three positions for which he had applied.
 
 
 3
 On June 28, 1990, Boyd filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). An administrative judge with the EEOC conducted a hearing, at which Boyd was represented by counsel. During the hearing, Boyd and three RTC witnesses testified, including Joseph Minniti, the director of RTC's Chicago office. The administrative judge issued a recommendation of no discrimination, which Boyd appealed. The EEOC affirmed the decision and then denied Boyd's motion for reconsideration. Boyd then filed a complaint in the district court on November 30, 1994. On May 3, 1996, the FDIC, as successor to the RTC, moved for summary judgment. In its order granting summary judgment in favor of the FDIC, the district court found that the FDIC had carried its burden of articulating a legitimate, non-discriminatory reason for declining to hire Boyd as an investigator and that the evidence indicated that Boyd was unqualified for the positions of managing agent, credit specialist, and review appraiser. We review the district court's grant of summary judgment de novo, accepting all facts and inferences in a light most favorable to Boyd, the non-moving party. Oates v. Discovery Zone, 116 F.3d 1161, 1165 (7th Cir.1997); Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1308 (7th Cir.1997).
 
 
 4
 Boyd argues that summary judgment was inappropriate because the record contains "conflicting testimony concerning [his] qualifications." Specifically, Boyd points to his own testimony at the EEOC hearing, in which he recounted how Webb told him during his interview that he probably could be used as an investigator. Boyd also points to the testimony of Minniti, who testified during the EEOC hearing that Boyd was qualified for the other three positions for which he applied--managing agent, credit specialist, and review appraiser. These statements, Boyd contends, demonstrate genuine issues of material fact that preclude summary judgment.
 
 
 5
 Before arguing that summary judgment is precluded by the existence of genuine issues of material fact, Boyd must establish the essential elements of his case. First, he must demonstrate the existence of a prima facie case of discrimination. In the case of a charge of racial discrimination stemming from a failure to hire, Boyd must demonstrate that (1) he is a member of a protected class; (2) he applied for and was qualified for an open position; (3) he was rejected for the position; and (4) the defendant granted the job to someone outside the protected class who had similar or lesser qualifications. See, e.g., Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1032 (7th Cir.1998); Sample v. Aldi Inc., 61 F.3d 544, 548 (7th Cir.1995). Only if this threshold inquiry is met must the defendant come forward with a legitimate, nondiscriminatory reason for the actions it took against Boyd. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant makes this showing, the burden shifts back to Boyd to show that the defendant's actions were not legitimate or were undertaken for reasons other than those claimed. Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir.1996). If Boyd is unable to offer proof concerning one of the essential elements of his case, all other facts are rendered immaterial. Hong v. Children's Memorial Hosp., 993 F.2d 1257, 1263 (7th Cir.1993).
 
 
 6
 Here, Webb told Boyd that he probably could be used as an investigator. This statement addresses Boyd's qualifications for the investigator position, and thus is part of the prima facie inquiry.[2] The statement does not create a genuine issue of material fact, however, because once Boyd demonstrated a prima facie case of discrimination regarding the investigator position, the defendant came forward with a legitimate, non-discriminatory reason for hiring other people that Boyd was unable to refute. The defendant explained that although Boyd qualified as a level nine investigator, it decided to hire only those applicants who achieved a rating of eleven or above. Boyd does not proffer any evidence indicating that this explanation was pretextual or unworthy of credence. See Kaniff v. Allstate Insurance Co., 121 F.3d 258, 263 (7th Cir.1997); Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir.1991). Although Boyd argues that pretext is demonstrated by the fact that only one African-American was hired for 78 available positions, this argument, without more, cannot demonstrate pretext--particularly since the applicants did not indicate their race anywhere on their applications. Boyd must show that race was the dispositive factor in the defendant's hiring choices, yet he has come forward with no evidence indicating that this was the case. See Rush v. McDonald's Corp., 966 F.2d 1104, 1112-13 (7th Cir.1992) ("The discharge of an individual, regardless of his race, is not violative of these federal statutes unless race was the basis for the decision to terminate the employment relationship."). See also Karazanos v. Navistar Intern. Transp. Corp., 948 F.2d 332, 337 (7th Cir.1991) ("A party to a law suit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture.") (citation omitted).
 
 
 7
 Boyd likewise maintains that Minniti's statement regarding Boyd's qualifications for the positions of managing agent, credit specialist, and review appraiser raises a genuine issue of material fact.[3] However, reviewing the record of the EEOC hearing in its entirety, we believe that this isolated statement incorrectly reflects Minniti's opinion regarding Boyd's qualifications because it contrasts markedly with the rest of Minniti's testimony. Throughout his interview, Minniti repeatedly expressed his opinion that Boyd was in fact not qualified for these positions. For instance, Minniti testified that his role was to approve the hiring recommendations of other staff members and that Boyd's application was never even forwarded to him for approval in connection with the managing agent, credit specialist, and review appraiser positions. Minniti also testified that Boyd did not possess the credentials or experience to be selected and hired for any of these three positions. The existence of one inconsistent statement cannot negate many pages of testimony establishing that Boyd's application failed to demonstrate the basic qualifications sought for these jobs. Accordingly, we conclude that Boyd failed to establish a prima facie case of discrimination as to the managing agent, credit specialist, and review appraiser positions.
 
 
 8
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The original defendant in this case was Jack Ryan, Acting Chief Executive Officer of the Resolution Trust Company ("RTC"). The RTC was terminated on December 31, 1995 and its assets and liabilities were transferred to the FSLIC Resolution Fund, which in turn is managed by the Federal Deposit Insurance Company ("FDIC"). Ricki Helfer, Chairman of the FDIC, succeeded Jack Ryan as the party defendant upon the RTC's termination
 
 
 [2]
 The district court assumed the existence of a prima facie case of discrimination with regards to the investigator position. While it is unclear from the record whether the defendant offered employment to persons outside the protected class with qualifications similar to or lesser than Boyd's, we will not disturb the court's prima facie finding
 
 
 [3]
 Specifically, the following dialogue ensued between Mr. Minniti and his counsel:
 Q: So, for the three positions we talked about, Managing Agent, Credit Specialist, and Review Appraiser, Mr. Boyd did demonstrate in his 171 [application] the basic qualifications that you were looking for in these positions, is that correct?
 A: That's correct.