NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 15, 2016[*]
Decided June 17, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 15-3014

| | |
|---|---|
| JOSEPH RUTLEDGE, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 870 |
| CITY OF CHICAGO, et. al., | |
| *Defendants-Appellees.* | John Robert Blakey, *Judge.* |

**O R D E R**

Joseph Rutledge alleged in this suit under 42 U.S.C. § 1983 that the City of Chicago and two of its building inspectors, Vallie Smith and Donald Kerksick, violated his Fourth Amendment rights by conducting a warrantless search of his home and discriminated against him by targeting his home for inspection because he is African-American. The district court granted summary judgment for the defendants, and Rutledge now asks us to overturn that decision. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

Rutledge owns a home on Chicago's south side that he shared with Yolanda Lasley, a domestic partner. (Lasley has since moved out, but that does not affect this case.) Lasley called the city's "311" non-emergency municipal services number in December 2012 to report a broken window in a neighbor's home, believing that the City would repair the window for free. Inspector Smith responded to the call and went to Rutledge's home. Smith noticed that one of Rutledge's windows was boarded, and knocked on the door. Lasley answered (Rutledge was not home) and Smith asked for, and received, permission to come inside to inspect the window. Smith entered and then, after being allowed by Lasley to use a bathroom in the basement, she heard the furnace cut off. Lasley told Smith that it cut off periodically, and Smith responded that she would send someone to look at it. Based on this inspection Smith later completed an administrative complaint citing the property with several violations of the municipal code, including broken windowpanes, a missing downspout, and general uncleanliness.

Inspector Kerksick visited the home three days later to inspect the furnace. Rutledge was not at home, and again Lasley invited the inspector inside. Kerksick completed an inspection report in which he wrote that the furnace was indeed inoperable and that a cooking stove was being used as a heating device. He also noted that the conditions in the home were "deplorable" and recommended that a "well-being check" be conducted on the occupants. Based on the reports of Inspectors Smith and Kerksick, the City of Chicago issued two administrative complaints against Rutledge as the homeowner. Following a contested hearing, the City fined Rutledge $815 for violations of the municipal code.

Rutledge brought this § 1983 suit alleging that the two inspectors violated the Fourth Amendment by conducting a warrantless, nonconsensual search of his home, and that the City violated the Equal Protection Clause through its "custom or practice of targeting African-American neighborhoods for building inspections" and issuing baseless citations to black homeowners.

The district court granted summary judgment for the defendants. Rejecting Rutledge's Fourth Amendment claim, the court concluded that Lasley had actual authority to consent to both inspections because she had been living full-time with Rutledge when the inspections occurred and had been living with him "off-and-on" for three years—"a significant period of time." She also had apparent authority to consent to both inspections, the court added, because she answered the door and told the inspectors that she lived in Rutledge's home. And the inspectors did not exceed the

scope of her consent, the court concluded, because Lasley did not impose any limits on the search. Finally, addressing Rutledge's equal-protection claim, the court found that he failed to produce any evidence to show that the City or its employees even knew of his race, much less that racial animus motivated the inspections of his home.

On appeal Rutledge argues that the district court abused its discretion by upholding the searches based on the consent of Lasley, whom he characterizes as "a third party who has no authority to consent." Rutledge asserts that, because he also resided in the home and objected to an inspection, the inspectors were required to obtain a warrant before entering. An administrative inspection, as a search, must comport with the Fourth Amendment's requirement of reasonableness, *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 534 (1967), and therefore must be supported by either an administrative search warrant or valid consent. See *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996). However, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974); see also *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008). Lasley conceded at her deposition that she allowed both Smith and Kerksick to enter the home, and despite Rutledge's attempt to portray her as a "third party," it is undisputed that she lived in the home at the time of the inspections. As a co-resident, Lasley had legal authority to consent to the search.

Rutledge also challenges the ruling on his equal-protection claim. To show that the City used a racial classification to single him out for his property inspection, he points to the notation "**Case Group[:]** TARGET" that appears atop the Notices of Violation which the City issued to him. But as the district court explained, Rutledge introduced no evidence to support any discriminatory inference from the notation, nor did he show that the same notation did not also appear on Notices of Violations sent to similarly situated white homeowners. We add that Rutledge offered nothing to refute the City's assertion that the notation was merely an internal designation to reflect the fact that its lawyers were handling the case during administrative proceedings (as opposed to those from the Department of Buildings, which handles other matters). In responding to a motion for summary judgment, a party may not rest on its pleadings, but must affirmatively show with "competent evidence of a type otherwise admissible" that there is a genuine issue for trial. *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 489–90 (7th Cir. 2007); *Billups v. Mehodist Hosp. of Chicago*, 922 F.2d 1300, 1302–03 (7th Cir. 1991).

AFFIRMED.