151 F.3d 1035
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald WARD, Plaintiff-Appellant,
v.
POST-TRIBUNE PUBLISHING, INC., Defendant-Appellee.
 No. 97-4048.
 United States Court of Appeals, Seventh Circuit.
 Argued June 10, 1998.
Decided July 23, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. No. 2:96-CV-140 JM James T. Moody, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. FRANK H. EASTERBROOK, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Donald Ward, a white male and the former sports editor for Post-Tribune Publishing, Inc., appeals the district court's entry of summary judgment in favor of the Post-Tribune on his Title VII claims of race and gender discrimination. 42 U.S.C. § 2000e et seq . The Post-Tribune fired Ward allegedly because a female correspondent accused Ward of sexual harassment. Ward filed suit claiming race and sex discrimination in violation of Title VII, as well as various state law claims. The district court entered summary judgment in favor of the Post-Tribune on all counts. On appeal, Ward argues that the district court's judgment should be reversed as to his Title VII claims because the correspondent's allegation of sexual harassment was not the real reason for his termination. We AFFIRM.
 
 
 2
 In April 1994 the Post-Tribune hired Ward as the sports editor for the paper's Gary, Indiana office. A year and a half later, however, Ward was terminated because Jeannine Pisowicz Athens ("Pisowicz"), a female correspondent working out of the Post-Tribune's Valparaiso (Porter County) bureau, claimed that Ward had sexually harassed her. In August 1995 Pisowicz agreed to write a weekly sports story for Ward. But by the end of the following month, Pisowicz told the Porter County Editor that she could no longer work for Ward because he made her uncomfortable.
 
 
 3
 Pisowicz's concerns were relayed to the Post-Tribune's Publisher (Scott Bosley), the Managing Editor (Katherine Manning), and the Director of Human Resources (Charles Cammack). Cammack immediately telephoned Pisowicz to find out what had happened with Ward.
 
 
 4
 According to Pisowicz, Ward first telephoned her to arrange a meeting to discuss the sports stories she would be writing for him. Ward asked her to meet him at McDonald's for lunch and Pisowicz, having never met Ward in person, asked Ward how she would identify him. Ward responded, "I am bald but real good looking." Over the next few weeks, Ward telephoned Pisowicz several times and twice asked her to meet him at a bar. The second invitation came with Ward's assurance that a group of Post-Tribune employees would be going along. Pisowicz declined his invitations. Shortly thereafter, Pisowicz telephoned Ward to discuss a story, and he criticized her stories as too short allegedly for the first time.
 
 
 5
 Cammack and Manning subsequently met with Ward and apprised him of Pisowicz's allegations. Ward confirmed the incidents related by Pisowicz, but denied having any intent to harass her. Regarding his criticism of Pisowicz's stories, Ward thought he had discussed article length requirements with Pisowicz during their first meeting at McDonald's. At the end of the interview, Ward was suspended with pay pending further investigation of Pisowicz's complaint.
 
 
 6
 Around October 4, Cammack and Manning discussed the incident with Publisher Bosley and Will Sutton, an editor who supervised Ward. (Ward also claims Sutton, who is black, discriminated against him because of race. See discussion below.). All four agreed that Ward should be terminated, but Bosley had the final decisionmaking authority. Bosley attests that he decided to terminate Ward based on the findings and recommendations of Cammack and Manning, but not based on any statements or opinions expressed by Sutton. The next day Manning and Cammack told Ward that he was being discharged because of Pisowicz's allegations, which Ward understood to be allegations of sexual harassment, and because those allegations would undermine his effectiveness as a manager.
 
 
 7
 Ward was replaced by a white male in November 1995, who was succeeded by another white male in March 1996. Ward nevertheless filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex and race discrimination. After receiving notice of his right to sue, he timely filed this suit alleging race and sex discrimination in violation of Title VII and various state law claims. The district court granted summary judgment to the Post-Tribune on all counts, and this appeal followed.
 
 
 8
 We review the entry of summary judgment de novo, viewing all facts and inferences in the light most favorable to the non-moving party. See Oates v. Discovery Zone, 116 F.3d 1161, 1165 (7th Cir .1997); Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1308 (7th Cir.1997). Summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).
 
 
 9
 On appeal, Ward raises only his Title VII claims. " 'A plaintiff can avert summary judgment for the defendant in an employment discrimination case either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the McDonnell Douglas formula.' " Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1140 (7th Cir.1998) (citations omitted). See McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because Ward offers no direct evidence of sex discrimination, to prevail he must first establish a prima facie case of discrimination. If (and only if) a prima facie case is established, a rebuttable presumption of discrimination arises and the employer must articulate a nondiscriminatory reason for discharge. If the employer carries this burden of producing a non-discriminatory reason, then the plaintiff must go forward with evidence proving that the employer's stated reason is merely a pretext for discrimination. See Essex, 111 F.3d at 1308-09.
 
 
 10
 Like the district court, we need not delay at the prima facie case prong because Ward has failed to call into question the honesty of the paper's (sexual harassment) reason for firing him. Consider Ward's three arguments: (1) the Post-Tribune did not adequately investigate Pisowicz's allegations; (2) her allegations were uncorroborated (and thus presumably untrue); and (3) even if true, the allegations did not justify his termination. The problem for Ward is that we consistently have held that under no circumstances can these arguments raise an inference of discrimination.
 
 
 11
 First, challenging the adequacy of the Post-Tribune's investigation gets Ward nowhere. Ward was an at-will employee, meaning he could be fired for any reason (or none at all) so long as the reason was not discriminatory. It follows that the Post-Tribune could fire Ward based on nothing more than a suspicion that he had harassed a coworker. Even if the newspaper came to that conclusion impulsively or without much investigation, Ward had to demonstrate that his employer's discriminatory bias somehow tainted the underlying investigation itself. See Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 677 (7th Cir.1997) ("Kariotis' energy is misspent by attacking the company's decisional process, unless she could point to facts suggesting that the company investigated her differently because she was an older employee (she has claimed age discrimination), or because she was on disability leave."). He offers no comparative evidence suggesting that the paper would have been more careful before firing a female employee (or, since he also claims race discrimination, a black employee) accused of intimidating a coworker. Id. Because there is no evidence that the paper approached his case differently than others, his attack on the company's investigation cannot prove illegal discrimination.
 
 
 12
 Nor does it assist Ward to argue that Pisowicz's charges against him were untrue. We do not insist that employers investigating complaints such as Pisowicz's be perfect, for they invariably will make mistakes. We insist only that their mistakes be honest ones, not tainted by illegal discriminatory bias. See id. at 678 ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the laws barring discrimination do not interfere.") (internal citation omitted). In other words, "arguing about the accuracy of the employer's assessment is a distraction," id. at 677, because "[n]o federal rule requires just cause for discharges." Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 558 (7th Cir.1987).
 
 
 13
 This leaves us with Ward's suggestion that the charges against him did not justify his termination. Little more need be said because we already have noted that Title VII does not require discharges to be supported by just cause. The statute requires only that a discharge not be prompted by discriminatory animus, and toward that vein Ward offers nothing. If the paper could lawfully fire Ward for no reason whatsoever, it follows that it could fire him for a flimsy one. See Pollard, 824 F.2d at 559 ("a reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination"). If Ward's argument is that Pisowicz's allegations did not amount to actionable sexual harassment under the law (they may well not have), it also fails because an employer "is certainly free to take a more stringent stance against sexual harassment [than Title VII requires]." Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1346 (7th Cir.1995). Perhaps an employer is overreacting to avoid or preempt more serious charges later, but that is its prerogative.
 
 
 14
 Ward's claim of race discrimination fails because he did not argue in support of it until his reply brief, which is too late. United States v. Spaeni, 60 F.3d 313, 317 (7th Cir.1995); United States v. Berkowitz, 927 F.2d 1376, 1391 (7th Cir.1991). But it is worth noting that his claim would fail on the merits anyway. Ward's only evidence appears to concern a dispute between himself and Will Sutton, a black editor, after Ward decided not to hire a black female Sutton recommended as an assistant sports editor. According to Ward, shortly after he made this decision he was "frozen out" of the paper's inner circle of management, and a year later he was fired. There is no evidence that Sutton participated in the paper's decision to fire Ward (in fact, the paper's (white) publisher made that decision and attested that Sutton's opinions played no part), but even if he did, at most it would prove only that Sutton wanted Ward fired because Ward once failed to hire an editor who happened to be black. And even if Ward's failure to hire a black applicant did prompt Sutton to retaliate against Ward and urge his discharge, it would mean only that Ward's employment decision--not his race--caused the negative reaction. There is no evidence that any negative treatment attributed to Sutton was prompted by Ward's race.
 
 
 15
 In sum, the Post-Tribune received complaints about Ward's behavior, and whether or not that alleged behavior rose to the level of sexual harassment, the paper found it to be unacceptable. Nothing in the record tells us that the paper saw the complaints as an opportunity to camouflage an unlawful reason (such as Ward's sex or race) for its decision.
 
 
 16
 AFFIRMED.