**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONALD W. SMITH,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2496

BUDGET RENT-A-CAR SYSTEMS,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-96-1705-A)

Submitted: September 22, 1998

Decided: October 13, 1998

Before NIEMEYER, MICHAEL, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, JOHNSON & ASSOCIATES, Arlington, Vir-
ginia, for Appellant. Thomas P. Dowd, LITTLER, MENDELSON,
P.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald Smith appeals from the district court's order entering judgment as a matter of law in favor of Budget Rent-a-Car Systems, Incorporated ("Budget"), in Smith's action alleging that he was terminated from Budget's employ because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A.§ 2000e to § 2000e-17 (West 1994 & Supp. 1998). On appeal, Smith asserts that the district court erred in determining that he failed to establish a prima facie case of racial discrimination and that the court erred in concluding that Budget articulated a legitimate nondiscriminatory reason for his termination. Finding no error, we affirm.

In reviewing the district court's grant of a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), without considering the credibility of witnesses, we view all of the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Bostick Oil Co. v. Michelin Tire Corp., 702 F.2d 1207, 1210 (4th Cir. 1983); Ard v. Seaboard Coast Line R.R., 487 F.2d 456, 457 (4th Cir. 1973). The following evidence was either stipulated or presented in Smith's case in chief.

Smith began his employment with Budget in September 1988, as a courtesy bus driver at National Airport. After approximately six months, Budget promoted Smith to the position of Bus Supervisor. In this capacity, Smith continued to drive a bus, but he also was responsible for keeping the buses properly spaced on four-minute intervals, keeping track of repairs, doing daily status reports on drivers, signing time cards, and evaluating and disciplining drivers. When Budget eliminated its bus service at National Airport, Smith was offered the opportunity to transfer to Dulles Airport. Because there were no Bus Supervisors at Dulles, Smith transferred to Dulles as a courtesy driver and worked from 2:00 p.m. to 10:30 p.m.

2

During the course of Smith's employment with Budget, Budget required all employees to keep track of their working time through the use of time cards. Employees were required to punch in and punch out at the beginning and end of their scheduled shifts. Any overtime worked would not be compensated unless a manager initialed the time card, indicating approval of overtime pay.

In November 1995, Smith was assigned the task of updating the Bus Driver's Manual. Amy Xander, the Dulles Airport Manager, assigned him this task, approved Smith's working on the manual outside of his normal shift, and assured him he would receive overtime pay for the extra time worked. Smith testified that he actively worked on the manual in November and December 1995.

On Friday, January 26, 1996, Smith received a telephone call at work and was informed that his brother had been brought to a hospital emergency room. When Smith's shift ended at 10:30 p.m., Smith left work. As he was leaving the parking lot, Smith realized that he had forgotten to punch out his time card. Smith asked Emilio Marcelo, the security guard at the front gate, to have a manager punch out his card. Approximately twenty minutes later, as Smith was driving home, he telephoned the Budget office and asked the individual who answered the phone to have a manager punch him out on his time card. Smith did not return to the Dulles location that evening, yet his time card was punched out at 1:40 a.m.

When he returned to work on Monday, January 29, Smith was summoned to a meeting with Airport Manager Amy Xander and Station Manager Carlos Larrazabal. Xander informed Smith that she was investigating irregularities in his time card. Xander noted that Smith had punched out significantly later than the end of his shift on December 26, 27, and 28, 1995 and January 26, 1996. Smith stated that he did not recall whether he had worked late on the three nights in December. He explained that he had not worked past 10:30 p.m. on January 26, 1996, and did not return to the facility, but had called the office and requested that a manager punch out his time card. Xander suspended Smith pending further investigation of the matter.

Later that day, Smith called Emilio Marcelo. Marcelo informed Smith that on January 26, he had forgotten to ask a manager to punch

3

Smith's time card, and that Marcelo punched it out himself at 1:40 a.m. Marcelo informed Smith that he would not admit to management that he had done this.

When Smith returned to Budget's office on January 30, 1996, for a meeting with Xander and Larrazabal, he was informed that a witness had placed him at the facility around 1:40 a.m. on the morning of January 27, 1996. Because Xander believed that Smith returned to the airport and punched out his time card himself, Xander terminated Smith's employment with Budget. During this meeting, Smith did not relate to Xander that Marcelo admitted to punching out Smith's time card.

Smith admitted at trial that if he had clocked out late on December 26, 27, and 28, without having worked late on those dates, that conduct would be a violation of company policy, as provided in the employee handbook. The sole evidence of racial animus is Smith's testimony that Larrazabal referred to Smith as a"nigger" and said that he did not talk to "people like [Smith]." However, Smith failed to introduce any evidence that Larrazabal was involved in the decision to terminate him. Smith testified about two meetings he had with Xander and Larrazabal regarding his time cards and his termination. At both, Xander is the only one who spoke with him. Larrazabal was merely a witness to the meetings. Because Smith failed to present evidence that Larrazabal was involved in the decision to terminate his employment, Larrazabal's racial comments do not support Smith's claim that he was terminated on the basis of his race. See EEOC v. Watergate at Landmark Condominiums, 24 F.3d 635, 640 (4th Cir. 1994) (observing that speaker must have been significantly involved in decision for statement to be relevant). Statements not related to an employment decision are not supporting evidence for a claim of racial discrimination. See EEOC v. Clay Printing Co. , 955 F.2d 936, 942-43 (4th Cir. 1992).

Lacking any direct evidence of discrimination, Smith attempted to prove discrimination under the three-part burden-shifting scheme outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under that analysis, the plaintiff must first prove a prima facie case of discrimination, which then raises an inference of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

The employer then has the burden of producing evidence of a legitimate nondiscriminatory reason for the plaintiff's termination. If the employer meets its burden, the prima facie case is rebutted and the inference of discrimination drops from the case. See id. The plaintiff then must prove that the proffered reason was merely a pretext for discrimination. See id.

To establish a prima facie case of race discrimination under Title VII, Smith was required to prove: (1) that he is a member of a protected class; (2) that he was qualified for the position of bus driver; (3) that he was discharged from that position; and (4) that the position remained open and ultimately was filled by a person not a member of the protected class. See St. Mary's, 509 U.S. at 506; McDonnell Douglas, 411 U.S. at 802. Construed in the light most favorable to Smith, the evidence presented by Smith established the first three elements. He established that he was black, that he was qualified for the position, and that he was discharged. However, Smith failed to present any evidence that Smith's former position as a bus driver remained open and that Budget continued to seek applicants with Smith's qualifications or that Smith's position was filled by a person not in the protected class. Because the record is lacking in any evidence as to what happened to his job, Smith failed to establish an "inference of discrimination" necessary to show a prima facie case under the McDonnell Douglas scheme. See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).

Smith contends that Budget's stated reason for terminating his employment was a pretext for discrimination. The only evidence Smith presented in support of this contention is testimony of how a former Station Manager did not strictly enforce the company's policies with respect to time cards. However, that evidence is not proof that Xander's more stringent enforcement of the time card procedures was pretextual. Smith also makes much of the fact that he did not expect to be paid for the additional time reflected on his time card unless he had a manager's signature on the card approving the overtime pay. However, based on the information that she had, Xander reasonably believed that on January 26, 1996, Smith completed his shift at 10:30 p.m., and returned to the facility at 1:40 a.m. to punch out his time card. Even if Xander's information was incorrect, her reliance upon that information is not evidence of a pretextual motive

5

for terminating Smith's employment. <u>See Pollard v. Rea Magnet Wire Co.</u>, 824 F.2d 557, 559 (7th Cir. 1987) (finding reasoned decision based on incorrect facts not evidence of pretext); <u>Smith v. Flax</u>, 618 F.2d 1062, 1067 (4th Cir. 1980) (decision maker's perception relevant).

Alternatively, pursuant to precedent from this Court, Smith could have established a prima facie case of racial discrimination by proving: (1) that he is a member of a protected class; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the discipline he received was more severe than that received by employees outside the protected class. <u>See Cook v. CSX Transp. Corp.</u>, 988 F.2d 507, 511 (4th Cir. 1993). However, Smith's case also fails under this test. Smith did not present evidence of any other employee who also violated the time card policy by punching out hours after stopping work, or in any other way falsified his time card entries. The only evidence of discipline meted out by Xander for comparable offenses shows that Xander exacted the same disciplinary measures on all employees who were discovered to have falsified records or engaged in theft from Budget. She terminated the employment of all five of them. Three of the individuals were white. Because Smith failed to show that Xander took more severe disciplinary action against Smith than against other employees who engaged in similar misconduct, Smith failed to establish a prima facie case of discrimination sufficient to withstand judgment as a matter of law.

Viewed in the light most favorable to Smith, there simply was no issue for the jury with respect to whether his employment was terminated on the basis of his race. We hold that the district court did not err in granting judgment as a matter of law in favor of Budget. Therefore, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6