**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 14-4289

———————————

ANTONIO SANTIAGO,
Appellant

v.

BROOKS RANGE CONTRACT SERVICES, INC.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:11-cv-07269)
District Judge: Hon. R. Barclay Surrick

———————————

Submitted Under Third Circuit LAR 34.1(a)
July 16, 2015

———————————

Before: SMITH, GREENAWAY, JR., and SHWARTZ, Circuit Judges.

(Opinion Filed:  July 20, 2015)

———————————

OPINION*

———————————

SHWARTZ, Circuit Judge.

---

\* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Antonio Santiago appeals the District Court's order granting summary judgment in favor of Brooks Range Contract Services, Inc. ("BRCS") on his age and race discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 et seq. ("PHRA"). For the following reasons, we will affirm.

I

Santiago, a Hispanic male in his seventies, worked for U.S. Facilities, Inc. ("USF") as an Environmental Control Center ("ECC") operator at the Social Security Administration ("SSA") building in Philadelphia, Pennsylvania, beginning in 1985. BRCS won a bid to replace USF as the facilities manager for the SSA building beginning on February 1, 2010. BRCS hired its employees from USF's work force. As part of the hiring process, Howard Anastasi, BRCS's Director of Human Resources, sought input about USF employees from Brian Gougler, Santiago's supervisor, and Francis Casey, an ECC operating engineer. Gougler and Casey told Anastasi that there had been "problems" with Santiago, App. 193-95, and Casey specifically told him that Santiago struggled with the computer systems and on one occasion fell asleep while on duty.

Anastasi testified that Casey's input did "[n]ot really" have an impact on his decision not to hire Santiago, App. 194, though it solidified his decision "[a] little bit,"

2

App. 195.[1]  Anastasi testified that his decision was based in part on an incident that occurred at the building in January 2010.  Anastasi, who was present but did not actually see what caused the incident, testified that there was "chaos," App. 194, and that he overheard a "number of people" say that Santiago was responsible because he "overlook[ed] alarms in the ECC," App. 193.  According to Anastasi, the incident "generated a great deal of concern" and made the SSA very upset.  App. 194.  Shortly thereafter, Gougler informed Santiago that BRCS was not going to hire him due to "poor performance."  App. 172.

Santiago sued BRCS, alleging that it refused to hire him because of his age and race, in violation of the ADEA, Title VII, and the PHRA.  In response, BRCS stated that Santiago was not hired because Rich Finocchio, the manager of the SSA building, informed Anastasi that Santiago had not mastered the fire alarm system, had been observed sleeping on the job, and had required frequent assistance, and because of the January 2010 incident.[2]  The District Court concluded that, although Santiago had

---

[1] Zach Jones, Santiago's immediate supervisor, testified that he heard Casey make derogatory remarks and jokes about certain ethnicities, and on more than one occasion refer to "people of a Spanish background" as "spics," App. 220, but that these comments were not directed at Santiago.  Jones further testified that he occasionally had disagreements with Casey about the employees Jones hired.  In particular, Jones recalled that Casey was displeased with his decision to hire Orlando Rivera, a Hispanic EEC operator.  Although Casey asked Jones why he hired Rivera, whom Casey referred to as "the Spanish guy," Casey's inquiry focused not on Rivera's ethnicity but rather on why one of Casey's associates was not hired instead.  App. 219.

[2] Santiago testified that he had not fallen asleep on the job or made errors related to the fire alarm system, and Jones described Santiago as "somewhere between [a] good and model employee."  App. 210.

established a prima facie case for age and race discrimination, he did not show that BRCS's legitimate, non-discriminatory reasons for not hiring him were pretext, and granted BRCS's motion for summary judgment. Santiago appeals.

## II[3]

### A

Santiago seeks relief under the ADEA, Title VII, and the PHRA. The analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), applies to all three statutes. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Under the McDonnell Douglas three-step test, the plaintiff must first establish a prima facie case of discrimination. Id. Second, "[o]nce the plaintiff establishes a prima facie case, 'the burden then . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (quoting McDonnell Douglas, 411 U.S. at 802). Third, if the employer meets its burden, "[t]he plaintiff then must establish by a preponderance of the

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review of the grant of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making reasonable inferences in the non-movant's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). "[T]hroughout this burden-shifting paradigm[,] the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

BRCS does not dispute that Santiago established a prima facie case of age and race discrimination, and Santiago concedes that BRCS articulated legitimate, non-discriminatory reasons for not hiring him. Thus, "[t]he sole issue of contention in this appeal . . . is whether [Santiago] has succeeded in creating an issue of fact as to whether [BRCS's] proffered non-discriminatory reasons for [not hiring him] are a pretext." Kautz v. Met-Pro Corp., 412 F.3d 463, 466-67 (3d Cir. 2005). To show pretext, the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (internal quotation marks and citation omitted). The employee "must show[] not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).

Santiago argues that BRCS's reasons for not hiring him are pretext because: (1) his alleged job performance issues are unsupported by documentation; (2) the reasons are

5

"conflicting," in that Finocchio was not named in Anastasi's deposition testimony, Appellant Br. 18; (3) Anastasi never actually observed Santiago in connection with the emergency incident; (4) the negative job performance reviews are inconsistent with Jones's favorable testimony about Santiago's abilities; (5) he is significantly older than many of the USF EEC employees who BRCS retained; and (6) he was replaced by a white EEC operator, and only white EEC operators were promoted to managerial positions.

These arguments are unavailing. First, the absence of documentation about Santiago's job performance issues is not a barrier to summary judgment, particularly where, as here, USF's personnel files were not made available to BRCS. See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995) (noting that while an employer's inability to produce a relevant document permits a negative inference, "[f]or the rule to apply, it is essential that the evidence in question be within the [employer's] control").

Second, BRCS's reasons for not hiring Santiago have not changed. Santiago was informed in January 2010 that BRCS was not going to hire him because of performance issues, and in its interrogatories, BRCS indicated that performance issues were the main reason Santiago was not hired. That Anastasi did not mention Finocchio in his deposition testimony does not mean BRCS's explanation is "'unworthy of credence,'" Fuentes, 32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)), especially since the information BRCS maintains Finocchio provided to

6

Anastasi is consistent with the information about Santiago's performance that Anastasi testified he had received from other employees, and which was corroborated by their testimony.[4] Moreover, although Anastasi did not observe Santiago commit an error during the emergency incident, he overheard a "number of people" blame Santiago for it, App. 193, an assertion Santiago does not rebut. As to Jones's positive views of Santiago's job performance, Santiago has not shown that Anastasi was aware of Jones's perspective at the time of the hiring decision. Thus, even if Santiago was not at fault for the emergency incident and was in fact a good performer, he has offered no evidence to indicate that Anastasi knew this at the time Anastasi made his decision or that the decision was motivated by discriminatory animus. See Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."); see also Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 559 (7th Cir. 1987) ("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination.").

Third, the composition of BRCS's work force undercuts Santiago's assertion that he was not hired based on his age or race. Of the ten employees BRCS hired, eight were

---

[4] For example, Gougler testified that Santiago had "issues [and] flaws," App. 271, including a failure to master the SSA building's fire alarm system, and that he heard from multiple sources that Jones had to assist Santiago with his duties because Santiago was unable to complete them himself. Casey testified that he frequently had to assist Santiago because he was unable to master the computer systems.

over the age of forty, including Santiago's older brother, Angel, who was seventy-nine.

Similarly, while Santiago maintains that a white employee, Joseph Dingler, took over his

role, he concedes that Dingler was ultimately replaced by a Hispanic employee.[5] These

facts undermine the assertion that BRCS's decision was motivated by Santiago's age or

race.[6] See Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 524 (3d Cir. 2003).

Santiago has thus failed to show that a reasonable juror would find BRCS's

reasons for not hiring him are "so plainly wrong" that they could not have been the real

reasons, and so he has failed to establish pretext. See Keller, 130 F.3d at 1109.

B

Santiago's reliance on the subordinate bias theory of discrimination also does not

provide him a basis for relief. Under this theory, an employer may be liable for

discrimination claims when an unbiased decision-maker is influenced by a biased

---

[5] To the extent only white EEC operators were promoted to managerial positions, Santiago has not shown that these operators were unqualified or promoted at the expense of better qualified members of the protected class, and absent such proof, we will not second-guess these business decisions. See Brewer, 72 F.3d at 332.

[6] Santiago also argues that under the mixed-motive theory of discrimination, there is a genuine dispute of material fact regarding whether race was a motivating factor in BRCS's decision not to hire him. Under the mixed-motive theory, as opposed to the McDonnell Douglas burden-shifting framework, the key question "is not whether discrimination played the dispositive role [in the adverse employment decision] but merely whether it played a motivating part." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (internal quotation marks omitted). To succeed on such a claim, the plaintiff must produce "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on . . . race in reaching" the adverse job decision. Brown v. J. Kaz, Inc., 581 F.3d 175, 183 (3d Cir. 2009) (internal quotation marks omitted). For the reasons set forth in the text, we conclude that Santiago has failed to show that race in any way motivated the decision not to hire him.

8

managerial employee.[7] See Staub v. Proctor Hosp., 131 562 U.S. 411, 420-21 (2011). To prevail on this theory, the plaintiff must demonstrate that the managerial employee performed an act motivated by discriminatory animus that was intended to cause, and was in fact the proximate cause of, an adverse employment action. Id. at 422. In this context, proximate cause is a cause that bears "a direct and substantial relation" to the adverse hiring decision. McKenna v. City of Phila., 649 F.3d 171, 178-79 (3d Cir. 2011).

Santiago argues that Casey's alleged anti-Hispanic bias caused Casey to provide negative information to Anastasi, which led Anastasi not to hire Santiago. Santiago has failed to demonstrate, however, that Casey's statements to Anastasi were the proximate cause of the decision not to hire him. Anastasi testified that Casey's input did "[n]ot really" have an impact on the decision, App. 194, and solidified it only "[a] little bit," App. 195. Accordingly, the subordinate bias theory is inapplicable here.

III

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment for BRCS.

---

[7] Santiago's claim that Casey was the decision-maker is not supported by the record, which makes clear that Anastasi was the decision-maker, and merely asked Casey for his views about his fellow employees.