NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-3621

———————————

MIKELE L. BOYLE, D.M.D.,
                                        Appellant

v.

PENN DENTAL MEDICINE; UNIVERSITY OF PENNSYLVANIA TRUSTEES;
PETER B. KAUDERWOOD; DENIS F. KINANE, B.D.S., PH.D.

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-04716)
District Judge: Honorable Legrome D. Davis

———————————

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2017

Before: AMBRO, RESTREPO, and COWEN, Circuit Judges

(Opinion filed: May 19, 2017)

———————————

OPINION[*]

———————————

AMBRO, Circuit Judge

## I.     INTRODUCTION

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Dr. Mikele L. Boyle, a 61-year-old dentist, alleges that Penn Dental Medicine, the Trustees of the University of Pennsylvania, Dr. Denis F. Kinane, and Peter B. Kauderwood (collectively, "Penn Dental") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 *et seq.*[1], and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, when they fired her following an investigation by Penn Dental's Quality Assurance Committee (the "Quality Committee" or simply the "Committee"). Although Boyle presents no direct evidence of age discrimination or intentional interference with her entitlement to ERISA-protected benefits, she claims that a reasonable jury could infer violations of the ADEA, the PHRA, and ERISA. Following discovery, the District Court granted summary judgment in favor of Penn Dental on all of Boyle's claims, and she appeals.

## II.     STANDARD OF REVIEW

Our review of an order granting summary judgment is plenary. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015). We will uphold a grant of summary judgment if, viewing the facts and any inferences therefrom in the light most favorable to the non-moving party, *Blunt v. Lower Merion School District*, 767 F.3d 247, 265 (3d Cir. 2014), "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a).

---

[1] "There is no need to differentiate between [plaintiff's] ADEA and PHRA claims because, for our purposes, the same analysis is used for both." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).

## III.   BACKGROUND

Boyle worked at Penn Dental from 1999 to 2013. In 2012, several of her colleagues reported concerns about Boyle's clinical work to Dr. Alisa Kauffman, Penn Dental's Clinical Director, who was in charge of overseeing the quality of dental care and minimizing costs. Kauffman herself had previously noticed "sloppy" treatment pre-authorization requests and poor treatment outcomes, so she performed her own quality assurance audit of Boyle's work. J.A. 5. Kauffman later met with the Dean of the University of Pennsylvania School of Dental Medicine, Dr. Denis Kinane, to discuss her concerns and recommend that he convene Penn Dental's Quality Committee.

Kauffman, Kinane, and Assistant Dean Peter Kauderwood then met with Boyle and asked her to resign. According to her, they accused her of malpractice and fraud and threatened to report her to the Pennsylvania Board of Dentistry if she did not resign immediately. When Boyle refused, Kinane convened the Quality Committee and suspended her with pay pending its review.

Neither Kauffman nor Kinane sat on the Quality Committee. Its six members consisted of four Penn Dental dentists, Kauderwood, and Dr. John Reitz, a prominent dentist not employed by Penn who was asked to chair the Committee. It reviewed between forty and sixty of Boyle's patients' charts and met with her to discuss nine cases in detail. The Committee came to a unanimous agreement that Boyle was not performing to Penn Dental's standard of care and recommended a six-month probationary period. Kinane accepted these findings and made arrangements for Boyle to return to work.

3

However, during Boyle's initial paid suspension, the dentists who treated her patients in her absence raised additional concerns with Kauffman about the quality of Boyle's work. When Kauffman relayed these concerns to Kinane, Kauderwood, and (through Kinane) the Quality Committee, the Committee increased the scope of its investigation. It met with the dentists who had raised concerns about Boyle and, after further review of her patients' outcomes, agreed, again unanimously, that Boyle was not planning and executing treatments to Penn Dental's minimum standards and that her clinical notes lacked adequate documentation. When Kinane received the Quality Committee's second report, which did not recommend remediation or probation, he fired Boyle in November 2013.

## IV.   ANALYSIS

### A.   Age Discrimination

We evaluate Boyle's age-discrimination claims under the familiar *McDonnell Douglas* burden-shifting formula: 1) the plaintiff has the burden of establishing a *prima facie* case of age discrimination; 2) if she does, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged adverse employment action; and 3) if the defendant meets its burden, the plaintiff must show that the defendant's proffered legitimate, nondiscriminatory reason was pretextual (that is, an excuse). *Willis*, 808 F.3d at 644. While it is not obvious that Boyle has even established a *prima facie* case, Penn Dental has offered a legitimate, nondiscriminatory reason for firing her, and she has failed to show it was pretextual. Consequently, we shall affirm the District Court's grant of summary judgment on that basis.

"The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Penn Dental produced significant evidence that it fired Boyle because she was not performing to its standard of care. Thus, in order to avoid summary judgment, Boyle must point to evidence that "1) casts sufficient doubt upon . . . the legitimate reason[] proffered by the defendant so that a factfinder could reasonably conclude that [it] was a fabrication; or 2) allows the factfinder to infer that [age] discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 762. She doesn't do so.

Boyle produced no direct evidence of discrimination. She admits that no one at Penn Dental ever mentioned her age during her review and eventual termination; that she has no reason to believe the Quality Committee was aware of or considered her age when it made its findings; that, to her knowledge, none of the dentists who initially raised concerns about the quality of her work had any bias against her; and that, while she suspected Kauffman had a grudge against her, the latter never did or said anything that would lead Boyle to believe there was a bias against older dentists.

In the absence of direct evidence, Boyle points to circumstantial evidence that she contends shows that Penn Dental's stated reason for firing her was pretextual. She looks first to the case of one former Penn Dental dentist, under age 40, who, unlike Boyle, was put on a performance management plan before being fired. Boyle claims the fact that this younger dentist received different treatment shows that Penn Dental discriminated against

5

her. But the example she cites is relevant only if Boyle and the younger dentist were similarly situated. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). They were not. While all of Penn Dental's concerns about Boyle related to the quality of the care she delivered (and thus went to the core of her work), the bulk of its concerns about Boyle's younger purported comparator focused on his productivity: tendency to leave work early, failure to come to work on Mondays, and refusal to accept new patients. J.A. 30, 354.

She next looks for support in the cases of other dentists over age 40 who Boyle contends were pushed out of Penn Dental. She admits that she has no personal knowledge of why these dentists left, has no basis on which to evaluate their quality as dentists, and received no information about their departures from anyone at Penn Dental. Other than the hearsay that Boyle delivered in her own deposition, she relies only on complaints, correspondence, and court filings relating to the other terminated employees. But hearsay, whether contained in Boyle's testimony or other employees' documents, is not admissible to defeat a motion for summary judgment. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

Taking on the Quality Committee's findings directly, Boyle presents her own testimony that she responded to all of the Committee's concerns, the affidavit of one former colleague, Dr. Steven Pesis, attesting that she "was an excellent dentist[,]" J.A. 346–47, and letters from a few patients who were satisfied with her care and upset about

6

her departure from Penn Dental. Boyle also notes that, over her nearly 15 years with Penn Dental, she received no complaints from patients.

But "[t]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext." *See Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). And the colleague whose affidavit she cites was neither a member of the Quality Committee nor a supervisor of Boyle's work. Finally, the notes of satisfaction and absence of complaints from patients who rely on the expertise of Penn Dental and its employees do little to cast doubt on the truth of its quality concerns.

"[W]e do 'not sit as a super-personnel department that reexamines an entity's business decisions.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 154 n.9 (3d Cir. 2017) (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." *McCoy*, 957 F.2d at 373 (quoting *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir. 1987)). "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *Id.* (internal citation omitted).[2]

---

[2] Boyle also complains about the Quality Committee's initial invitation to meet with her to discuss certain patients' charts within two weeks of giving her notice of the cases to be reviewed. She notes that the Committee's policy affords preparation time of "up to one month" to dentists under review. *See* J.A. 9 n.8. She asked for more time, and although a discovered e-mail written by the Committee's chair shows his reluctance, the Committee

7

The closest Boyle gets to casting doubt on Penn Dental's concerns is her citation to the affidavit of Steven Pesis, who, despite Kauffman's statement to the contrary, stated that he did not approach her with concerns about Boyle's work. The affidavit might raise an eyebrow, but it is not enough for a reasonable jury to infer that Penn Dental's reasons given for firing Boyle were pretextual. Pesis was only one of four dentists who came to Kauffman with concerns about Boyle, and Boyle presents neither deposition testimony nor affidavits from the other three. Moroever, even were Kauffman biased or misguided in her initial concerns, she was neither a member of the Quality Committee nor the one who made the ultimate decision to fire Boyle. And Boyle presents no evidence that Kauffman was biased against her *because of* her age.

For all of these reasons, we agree with the District Court's grant of summary judgment in favor of Penn Dental on Boyle's age-discrimination claims.

## B.     Interference with Retirement Benefits

"Section 510 of ERISA prohibits employer conduct taken against an employee who participates in a pension benefit plan for 'the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.'" *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987) (quoting 29 U.S.C. § 1140). Boyle dedicates just four sentences of her brief to defending her ERISA claim. She contends only that this claim is based on the same evidence of pretext supporting her age-

---

granted her request. Without more, it is difficult to see how this apparent slight undermines the Committee's conclusions about the quality of Boyle's work.

8

discrimination claims, that the District Court was wrong to grant summary judgment as to those claims, and thus that she must also prevail on her ERISA claim.

We take Boyle's invitation to evaluate her ERISA claim in the same light as her age-discrimination claims, and, accordingly, we affirm the District Court's grant of summary judgment on this claim as well. We also note, however, that a finding of pretext with respect to Boyle's ADEA claim would not necessarily require reversal as to her ERISA claim because the latter requires a showing of "specific intent to violate ERISA." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997) (internal quotation marks omitted). Moreover, Boyle does not identify any ERISA-covered retirement benefits that would have vested absent her termination. She cites her own deposition testimony regarding tuition benefits to which she would have continued to be entitled if she later retired from Penn Dental. *See* J.A. 286–287. But it argues that these benefits are not governed by ERISA, J.A. 59–60, and Boyle makes no argument to the contrary. Accordingly, Boyle's ERISA claim cannot stand.

*　　*　　*　　*　　*

We thus affirm the judgment of the District Court.